UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**UNITED STATES OF AMERICA,**

        Plaintiff(s),         **CASE NUMBER: 07-20472**
                                            **HONORABLE VICTORIA A. ROBERTS**

**v.**

**RODNEY RUDY SIERZ,**

        Defendant(s).
_____/

**ORDER ADOPTING THE MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION**

**I.    INTRODUCTION**

This matter is before the Court on Defendant Rodney Rudy Sierz's ("Sierz") "Motion to Suppress Physical Evidence." (Doc. #35). Sierz asks the Court to suppress the cocaine seized by Task Force Officer Art Wimmer ("Investigator Wimmer") of the Detroit Police Department.

An evidentiary hearing was held on December 17, 2007 and continued on January 25, 2008 and April 4, 2008.

On October 7, 2008, Magistrate Judge Scheer issued a Report and Recommendation ("R&R") that recommends the Court DENY Sierz's motion. He says the agents had probable cause to believe Sierz committed a drug trafficking offense and/or that evidence of a drug trafficking offense would be found in the tan Explorer. In the alternative, Magistrate Judge Scheer says the investigatory stop was legal because the agents had reasonable suspicion to believe evidence of drug trafficking might be

1

found in the SUV.

Sierz objects. He says: (1) the facts do not support a reasonable suspicion or probable cause standard; and (2) the agents were not suspicious about the tan Explorer or its occupants before the traffic stop was conducted.

Sierz also says Magistrate Judge Scheer failed to include important facts in the R&R. Those "important facts" are reflected in the following section.

For the following reasons, the Court **ADOPTS** the R&R.

## II.    BACKGROUND

### A.    Co-Defendant Cardell Clinton Campbell's Traffic Stop and Cocaine Seizure

On September 14, 2007, Special Agent Brian Malagrida of the Drug Enforcement Administration organized a surveillance team to intercept a large scale drug transaction.

At approximately 1:20 p.m. on September 14, 2007, members of the surveillance team began their investigation at 6700 Iowa Street, the residence of Sierz's co-Defendant Cardell Clinton Campbell ("Campbell"). Agents from the surveillance team followed Campbell from Iowa Street to 12666 Mendota, an address agents did not have information about at the time Campbell arrived.

Task Force Officer Sergeant Benito Mendoza initially said Campbell did not engage in suspicious activity during the entire surveillance. Later in the evidentiary hearing, Sergeant Mendoza said that because the surveillance team was following Campbell – whom they believed to be a narcotics trafficker – he found it suspicious that Campbell went to the Mendota address for a short period of time.

After Campbell left the Mendota address, Deputy Burnon Lilly of the Wayne County Sheriff's Department was "directed" to "pull over" Campbell. Lilly conducted the traffic stop at approximately 2:20 p.m.

Corporal David Rahn of the Wayne County Sheriff's Department arrived at the traffic stop at approximately 2:40 p.m. with his drug-sniffing dog, "Chief." Chief sniffed the exterior and interior of the car Campbell drove. Chief "alerted" inside the car near the front passenger seat, and Deputy Lilly retrieved a black plastic bag that contained a kilogram of cocaine.

**B.     Surveillance of co-Defendants Thrillden Gabriel Holmes and Matt Preston Stewart**

Special Agent Paul Sorce ("SA Sorce") of the Federal Bureau of Investigation ("FBI") observed Campbell's traffic stop for a short period of time. At approximately 2:45 p.m., SA Sorce began surveillance on 12666 Mendota with Special Agent Anthony Hartman ("SA Hartman") of the FBI.

SA Hartman notified SA Sorce that he observed a white Cadillac parked in the rear of 12666 Mendota. SA Sorce obtained the license plate number of the white Cadillac and radioed it to SA Hartman. SA Hartman ran the plate and discovered it was registered to co-Defendant Thrillden Gabriel Holmes ("Holmes"), who had several felony convictions, at least one drug conviction, and a weapons conviction.

Holmes and co-Defendant Matt Preston Stewart ("Stewart") departed 12666 Mendota in the white Cadillac. While SA Hartman maintained a fixed eye on 12666 Mendota, SA Sorce followed the white Cadillac to a transmission shop on Warren Avenue. He then followed it to BT's Club on Michigan Avenue in Dearborn, where it

remained for 30-45 minutes.

Holmes and Stewart left BT's Club and returned to 12666 Mendota.

### C. Surveillance of Sierz

While the white Cadillac was at BT's Club, SA Hartman notified SA Sorce that a tan Explorer parked on the street directly in front of 12666 Mendota and behind a black Windstar minivan at approximately 4:28 p.m. Kelly Jo Lamero ("Lamero") was the driver of the tan Explorer, and Sierz was in the passenger seat on the phone.

Stewart owns the black minivan. He has weapons and/or narcotic offenses, and the agents believed he had a connection to 12666 Mendota.

When the white Cadillac returned to 12666 Mendota, it pulled all the way into the driveway, and the tan Explorer followed. Both the car and the SUV were out of the agents' sight.

No one saw: (1) either individual exit the tan Explorer; (2) anyone from the Mendota address approach that SUV; or (3) either individual in the tan Explorer have contact with the black minivan.

The tan Explorer backed out of the driveway 4-5 minutes later, and SA Hartman ran the license plate. The tan Explorer was registered to Lamero with a Grand Rapids address. No member of the surveillance team knew Lamero's criminal history.

SA Sorce followed the tan Explorer onto westbound I-96. Investigator Wimmer picked up surveillance on I-96 and Wyoming. Wimmer pulled alongside the passenger side and noticed Sierz looking into a box that was inside a plastic bag. Sierz looked as if he was smiling. Wimmer then observed Sierz place the bag behind the driver's seat.

At that point, SA Sorce told Investigator Wimmer to "direct" the Livonia Police

Department to "pull over" the tan Explorer. Based on the surveillance, Wimmer's observation, and the kilogram of cocaine found in the car Campbell drove, SA Sorce believed Sierz was involved in a conspiracy to distribute or possess or purchase narcotics.

### D.    Sierz's Investigatory Stop and Cocaine Seizure

The Livonia Police Department stopped Lamero and Sierz on I-96 near the Levan exit at approximately 5:00 p.m. When Investigator Wimmer approached Sierz, he was outside the SUV.

SA Sorce arrived on the scene shortly after the stop. He approached Lamero, identified himself as a special agent, and verbally advised Lamero of her rights. SA Sorce confirmed Lamero's identity through her license. SA Sorce asked Lamero "where they had been, or basically what they were doing in Detroit." Lamero said she left Grand Rapids with her boyfriend that afternoon, drove to the mall to purchase shoes, and they were on their way back to Grand Rapids.

SA Sorce asked Lamero if the SUV contained narcotics. According to SA Sorce, she replied, "not to her knowledge." SA Sorce then obtained Lamero's consent to search the SUV.

SA Sorce advised Investigator Wimmer that Lamero consented to a search. Wimmer searched the SUV. Within a minute, he found the plastic bag Sierz was looking in behind the driver's seat. Inside the plastic bag was a shoe box. Inside the shoe box was a "brick" of cocaine.

Scout car videos and radio transmissions from September 14, 2007 either do not exist or were not made available.

On September 25, 2007, Sierz was charged with: (1) Conspiracy to Possess with Intent to Distribute and to Distribute Cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846; and (2) Possession with Intent to Distribute Cocaine, in violation of 21 U.S.C. §841(a)(1).

### III. APPLICABLE LAW AND ANALYSIS

The Government concedes the agents did not have probable cause to conduct a traffic stop because Lamero did not commit a traffic infraction.

The question is whether the investigatory stop was justified based on reasonable suspicion to believe evidence of drug trafficking might be found in the tan Explorer.

Law enforcement officers may conduct an investigatory stop if they have a "reasonable suspicion" that an individual committed a crime. *Houston v. Clark County Sheriff Deputy John Does 1-5*, 174 F.3d 809, 813 (6th Cir. 1999) (citing *Delaware v. Prouse*, 440 U.S. 648, 663 (1979); *United States v. Palomino*, 100 F.3d 446, 449 (6th Cir. 1996)). Probable cause is not required. *United States v. Pearce*, 531 F.3d 374, 380 (6th Cir. 2008) (citations omitted). Reasonable suspicion must be based on "a particularized and objective basis for suspecting the particular person . . . of criminal activity." *Houston*, 174 F.3d at 813 (quoting *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)). The officer cannot base the investigatory stop on an ill-defined hunch. He or she must be able to identify "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" the stop. *Houston*, 174 F.3d at 813 (citing *Terry v. Ohio*, 392 U.S. 1, 21 (1968); *United States v. Erwin*, 155 F.3d 818, 822 (6th Cir. 1998)).

The agents did not observe a drug transaction during their entire surveillance of

Sierz. However, a kilogram of cocaine was seized after Campbell left 12666 Mendota; Sierz waited at 12666 Mendota for Holmes, who has a drug conviction; once Holmes returned, the white Cadillac and tan Explorer parked out of the agents' sight; Sierz stayed at 12666 Mendota for a short period of time after Holmes returned; and Investigator Wimmer observed Sierz looking into a box smiling after he left the Mendota address.

While the Livonia Police Department officer who conducted the stop did not personally observe the surveillance of the tan Explorer and did not have information about the suspected drug transaction, reasonable suspicion may be satisfied by the collective knowledge of the police. *United States v. Townsend*, 330 F.3d 438, 441 (6th Cir. 2003). Further, Investigator Wimmer was present when the investigatory stop occurred. The Livonia Police Department officer only conducted the stop of the SUV because the agents were in unmarked cars.

Viewing the evidence in the light most favorable to the Government, and based on the totality of the circumstances, the agents had at least reasonable suspicion to believe that Sierz was part of a drug distribution conspiracy and that he had just picked up cocaine at 12666 Mendota.

Even if the agents lacked reasonable suspicion, however, the cocaine seizure was lawful based on Lamero's voluntary consent to search her SUV. "A law enforcement officer does not violate the Fourth Amendment merely by approaching an individual, even when there is no reasonable suspicion that a crime has been committed, and asking [her] whether [she] is willing to answer some questions. This includes a request for consent to search the individual's vehicle." *United States v.*

7

*Erwin*, 155 F.3d 818, 823 (6th Cir. 1998) (citations omitted).

Based on these findings, the Court need not address whether the agents had probable cause to believe Sierz committed a drug trafficking offense.

## IV.     CONCLUSION

The Court **ADOPTS** the Magistrate Judge's R&R.  Sierz's motion to suppress is **DENIED**.

**IT IS ORDERED**.

S/Victoria A. Roberts  
Victoria A. Roberts  
United States District Judge

Dated:  November 4, 2008

---

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on November 4, 2008.

s/Carol A. Pinegar  
Deputy Clerk

---